UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS G.,[1] | ) |
|           Plaintiff, | ) No. 19 CV 7033 |
| v. | ) Magistrate Judge Young B. Kim |
| KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security, | ) |
|           Defendant. | ) August 27, 2021 |

**MEMORANDUM OPINION and ORDER**

Douglas G. seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") based on his claim that strokes, speech delay, cognitive impairment, depression, and anxiety prevent him from engaging in full-time work. Before the court are the parties' cross motions for summary judgment. For the following reasons, Douglas's motion is granted, the government's is denied, and the matter is remanded:

**Procedural History**

Douglas filed his DIB and SSI applications in January 2017, alleging disability beginning on December 1, 2016. (Administrative Record ("A.R.") 16, 234-37, 238-45.) The government denied his applications initially and on request for

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the claimant's first name and last initial throughout this opinion to protect his privacy to the extent possible.

[2] Kilolo Kijakazi has been appointed Acting Commissioner of Social Security. As such, she is automatically substituted as Defendant in this case. *See* Fed. R. Civ. P. 25(d).

reconsideration. (Id. at 16, 105-52.) Douglas requested and received a hearing before an administrative law judge ("ALJ"), (id. at 174-78, 195-223), and in May 2018 he appeared at the hearing with his attorney and a vocational expert ("VE"), (id. at 34-73). In October 2018 the ALJ issued a decision finding that Douglas was not disabled. (Id. at 16-28.) When the Appeals Council declined review, (id. at 1-6), the ALJ's decision became the final decision of the Commissioner, see *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Douglas then filed this lawsuit seeking judicial review, and the parties consented to the court's jurisdiction. (R. 6); see also 28 U.S.C. § 636(c).

A.   **Hearing Testimony**

Douglas graduated from high school, having participated in special education classes, and worked as a security guard and car porter until he suffered a stroke in April 2016, followed by another stroke in November 2016. Douglas has experienced secondary effects from the strokes, including numbness and tingling in his left hand and leg, cognitive deficits, speech delay, decreased attention span, and impaired memory. Douglas also has a history of depression and anxiety.

At his May 2018 hearing Douglas testified that he stopped working in 2016 after suffering multiple strokes. (A.R. 42.) Since then he has had memory issues, impaired speech, depression, and anxiety. (Id. at 43, 51-52.) He said that he is forgetful and becomes easily "flustered" and angry when he has "problems coming up with words" to communicate. (Id. at 44, 61.) He speaks more slowly and slurs his words on occasion. (Id. at 57.) He also has difficulty following instructions. (Id.)

2

In terms of treatment, Douglas underwent speech, occupational, and physical therapy after his strokes. (Id. at 43.) He no longer participates in speech therapy because he reached maximum medical improvement. (Id. at 44.) He has attended weekly counseling since suffering his strokes. (Id. at 51.) He attempted suicide and was admitted for inpatient mental health treatment. (Id. at 53.) As to Douglas's daily activities, he is "able to take care of [him]self, clothe [him]self, and feed [him]self." (Id. at 47.) He prepares simple meals for lunch, cleans the house, and works in the yard. (Id. at 47-48.) He also goes for walks and drives short distances. (Id. at 49-50.)

A VE also testified at the hearing and described Douglas's prior work as a security guard and a car porter as light work as he performed them. (Id. at 64.) The ALJ asked the VE whether a hypothetical individual could perform Douglas's past work if he had a residual functional capacity ("RFC") for light work with limitations including frequent operation of hand controls bilaterally, frequent handling and fingering bilaterally, occasional climbing of ramps and stairs, never climbing ladders, ropes, and scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling. (Id.) This individual cannot work in occupations requiring frequent or constant verbal communications, but he can understand, carry out, remember, and perform simple, routine, repetitive tasks with end-of-day goals, not at production-rate pace. (Id. at 65.) This individual is also limited to occupations with simple, work-related decisions, and the ability to adapt only to routine workplace changes. (Id.) The individual can frequently interact with supervisors,

3

coworkers, and the general public. (Id.) The VE testified that such a person could not perform Douglas's past work but could perform other jobs in the national economy, such as cafeteria attendant, sorter, and office cleaner. (Id. at 66.)

**B.     ALJ's Decision**

The ALJ engaged in the standard five-step evaluation process in considering Douglas's DIB and SSI claims. *See* 20 C.F.R. § 404.1520(a). At steps one and two the ALJ found that Douglas had not engaged in substantial gainful activity since his alleged onset date of December 1, 2016, and that he suffered from the severe impairments of vascular insult to the brain, depression, and anxiety and from the medically determinable impairments of obesity, diabetes, and hypertension. (A.R. 19.) At step three the ALJ determined that Douglas's impairments were not of listings-level severity. (Id. at 20.)

Before turning to step four, the ALJ determined that Douglas retained the RFC for light work, but that he was limited to: frequently operating hand controls bilaterally; frequently handling and fingering bilaterally; occasionally climbing ramps and stairs but never climbing ladders, ropes, and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; never working in occupations that require frequent or constant verbal communications; understanding, carrying out, remembering, and performing simple, routine, repetitive tasks, not at a production-rate pace such as assembly line work, but completing all end-of-day goals involving simple work-related decisions with the ability to adapt only to workplace changes; and frequently interacting with

4

supervisors, coworkers, and the general public. (Id. at 22.) In explaining his assessment, the ALJ wrote that the medical evidence and other evidence of record did not support Douglas's claim that his impairments were so severe that he was unable to continue working. (Id. at 22-23.) At steps four and five, the ALJ concluded that Douglas could not perform his past relevant work but that he could perform other jobs that exist in significant numbers in the national economy. (Id. at 26-27.)

## Analysis

Douglas argues that the ALJ erred by: (1) improperly weighing the state agency reviewing psychologists' opinions; (2) incorrectly assessing his RFC; and (3) wrongly rejecting statements regarding his subjective symptoms. In reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ, allowing reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

A.      **Reviewing Psychologists' Opinions**

Douglas argues that the ALJ erred by giving great weight to the opinions of reviewing psychologists Drs. David Voss and Joseph Mehr, and then finding at step five that Douglas could perform jobs requiring an understanding of detailed instructions, contrary to those opinions. (R. 11, Pl.'s Br. at 7-9.) When weighing medical opinions, an ALJ must consider certain regulatory factors, including the length, nature, and extent of the treatment relationship, the supportability of the medical source's opinion, the consistency of the opinion with the record, and the source's specialization. 20 C.F.R. § 404.1527(c); *see also Walker v. Saul*, No. 18 CV 918, 2020 WL 1698857, at *3 (N.D. Ind. April 8, 2020). The ALJ "must [also] consider the entire record, including all relevant medical and nonmedical evidence," and adequately explain why he weighed an opinion in light of the record. *Murphy v. Astrue*, 454 Fed. Appx. 514, 518 (7th Cir. 2012) (quotations and citations omitted).

When the ALJ evaluated the reviewing psychologists' opinions in this case, he assigned them great weight, finding them to be accurate and consistent with the objective medical evidence. (A.R. 25.) Specifically, the ALJ pointed to the reviewing psychologists' opinions that Douglas should be limited to "simple repetitive routine tasks" because of a "cognitive slowing" that occurred after his strokes. (Id.) The ALJ also relied on their opinions that Douglas's "interactions at home, his ability to do certain household chores, and [his] recall ability at his therapist appointments" do not support a marked level of limitation in Douglas's ability to concentrate, persist, and maintain pace (collectively, "CPP"). (Id.) While not discussed by the

6

ALJ, the reviewing psychologists further opined that Douglas can "understand and remember simple but not detailed or complex instructions." (Id. at 85, 121, 140.)

Douglas contends that the ALJ erred by giving great weight to these opinions but failing to limit him to work requiring no "detailed or complex instructions" as the reviewing psychologists opined. (R. 11, Pl.'s Br. at 7.) In his RFC the ALJ limited Douglas to understanding, carrying out, remembering, and performing simple, routine, repetitive tasks. (A.R. 22.) He did not, however, limit Douglas to work involving "simple instructions," as the government concedes. (R. 24, Govt.'s Mem. at 5.) The government nonetheless argues that the ALJ's RFC and reviewing psychologists' opinions do not "conflict[]." (Id. at 4.) But limiting Douglas to simple, routine, repetitive tasks does not rule out all work requiring an ability to understand detailed instructions under the Dictionary of Occupational Titles ("DOT"), as exemplified by the fact that two of the positions the ALJ found him capable of performing at step five require such an ability. (R. 11, Pl.'s Br. at 7-9.) In any event, the ALJ was required to explain how he weighed the reviewing psychologists' opinions, including their determination that Douglas cannot understand or remember complex or detailed instructions. *Murphy*, 454 Fed. Appx. at 518. Here the ALJ failed to do so.

Douglas asserts that the record supports the reviewing psychologists' opinions about simple instructions. (R. 11, Pl.'s Br. at 8.) While the court may not reweigh evidence, *Deborah M.*, 994 F.3d at 788, the reviewing psychologists cited activities of daily living and memory tests as support for their opinions, (A.R. 85,

7

121, 140). As to activities of daily living, Douglas reported difficulty "remember[ing] directions," "stay[ing] focused," and understanding materials he read. (Id. at 287.) He would miss appointments if he did not write them down. (Id. at 291.) Similarly, Douglas's sister-in-law reported that he suffered from short-term memory loss, resulting in his need for reminders and "repeated directions." (Id. at 298, 348.) She indicated that he could "handle one to two step directions at most." (Id. at 303.) The ALJ found that Douglas's subjective symptom allegations were inconsistent with the record evidence, and he granted "little weight" to Douglas's sister-in-law's function reports. (Id. at 23-25.) The ALJ was permitted to discount opinions based solely on subjective complaints, *see Fair v. Saul*, 853 Fed. Appx. 17, 21 (7th Cir. 2021), but here he failed to explain how the reviewing psychologists' reliance on such information impacted his evaluation of their opinions.

Moreover, the reviewing psychologists relied not only on subjective allegations but also on the results from memory tests to support their opinions. (A.R. 85, 121, 140.) The record includes an evaluation by treating care provider Ruth Johnson, who found that Douglas was 87% accurate for immediate memory, 67% accurate for recall of general information, and 0% accurate in recalling three words after five to eight minutes. (Id. at 565.) Based on her evaluation, Johnson concluded that Douglas "shows deficits in memory, word retrieval, abstract reasoning and language, organization and decreased attention/concentration and attention to detail." (Id.) In the portion of his decision discussing the paragraph B criteria, the ALJ cited Johnson's findings but suggested they indicated issues only

8

with Douglas's "immediate term" memory. (Id. at 20.) The ALJ cited additional testing performed three weeks after Johnson's evaluation, which he said showed a significant improvement in Douglas's delayed recall. (Id. at 21.) Regardless, the ALJ did not explain how, if at all, Johnson's evaluation—or other memory tests in the record[3]—impacted his assessment of the reviewing physicians' opinions. Without an adequate explanation as to why the ALJ granted great weight to the reviewing psychologists' opinions but ignored their simple-instructions limitation, the ALJ's evaluation of these opinions lacks the support of substantial evidence.

The government argues that even if the ALJ erred by not limiting Douglas to work requiring simple instructions, the error was harmless. (R. 24, Govt.'s Mem. at 5-6.) In the social security context, an error may be found harmless where "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Douglas asserts that such confidence is lacking here because at step five the VE found Douglas capable of performing work as a cafeteria attendant and sorter, (A.R. 66), and under the DOT those jobs require level-two reasoning, including the ability "to carry out detailed but uninvolved written or oral instructions," (R. 11, Pl.'s Br. at 7 (quoting DOT, Appx. C (III), 1991

---

[3] In another memory test, psychologist Dr. John Peggau found that Douglas was "below average in recalling five digits forward and three digits in reverse order on immediate recall," and "one out of four words after a brief delayed recall." (A.R. 696-97.) The ALJ afforded partial weight to Dr. Peggau's opinion because the ALJ disagreed with his opinion that Douglas was not capable of managing finances. (Id. at 25.) The ALJ did not discuss Dr. Peggau's memory test or explain how the reviewing psychologists' reliance on such information impacted his opinion evaluation.

9

WL 688702)). Given the reviewing psychologists' opinions that Douglas cannot understand or remember detailed or complex instructions, he contends that he is capable of only level-one reasoning, requiring an ability "to carry out simple one- or two-step instructions." (Id. at 7-8 (quoting DOT, Appx. C (III), 1991 WL 688702)).

The government responds that level-two reasoning in the DOT does not "match up" with the Social Security Administration's standards for "simple versus detailed instructions." (R. 24, Govt.'s Mem. at 5.) The government suggests that even if Douglas could not understand or remember detailed or complex instructions, he may still be able to perform jobs with level-two reasoning under the DOT. (Id.) For support the government cites *Sawyer v. Colvin*, 512 Fed. Appx. 603, 611 (7th Cir. 2013), in which the Seventh Circuit found that "even workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring level 3 reasoning development." What gives this court pause is that it must find with great confidence that the ALJ's decision would be reinstated on remand. *See Spiva*, 628 F.3d at 353. Here the ALJ did not ask the VE whether a hypothetical person with Douglas's RFC and a limitation to simple instructions would be able to perform the jobs identified. Without testimony from the VE confirming that a worker unable to follow detailed instructions could perform the identified jobs requiring level-two reasoning, this court cannot say with great confidence that the ALJ's decision would be reinstated.

10

Even so, the government contends that the ALJ's decision should be affirmed because one of the positions identified by the VE requires only level-one reasoning under the DOT—office cleaner (27,000 jobs in the national economy). (R. 24, Govt.'s Mem. at 6.) At step five an ALJ must ensure that substantial evidence supports the VE's testimony that "suitable jobs exist in significant numbers." *Chavez v. Berryhill*, 895 F.3d 962, 963 (7th Cir. 2018). Here the ALJ relied on the VE's testimony that occupations such as cafeteria attendant (41,000 jobs nationally), sorter (39,000 jobs nationally), and office cleaner (27,000 jobs nationally) would be available for Douglas to perform. (A.R. 27.) Because two of those positions—cafeteria attendant and sorter—may not be available to a worker with Douglas's RFC and a limitation to simple instructions, only 27,000 jobs potentially remain.

In addressing whether a single position with 27,000 jobs nationally is sufficient to satisfy the standard that suitable jobs must exist in significant numbers, the parties present conflicting positions. Douglas argues the number is too low, and the government responds that it is "above the threshold." (Compare R. 11, Pl.'s Br. at 9 with R. 24, Govt.'s Mem. at 6-7.) To support his claim, Douglas points to an Indiana district court decision finding that even 120,350 jobs are not enough to meet the standard. (R. 11, Pl.'s Br. at 9 (citing *Sally S. v. Berryhill*, No. 18 CV 460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019).) The government in turn cites two Seventh Circuit cases finding that 110,000 and 140,000 jobs are "well above the threshold for significance." (R. 24, Govt.'s Mem. at 6-7 (citing *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011); *Primm v. Saul*,

11

789 Fed. Appx. 539, 546 (7th Cir. 2019)).) The government also cites Sixth and Ninth Circuit decisions finding less than 27,000 national jobs sufficient. (See id. (collecting cases).)

But the governing standard is not whether a jobs number falls above or below a set numerical value, but whether substantial evidence supports the VE's testimony that significant jobs exist. *Chavez*, 895 F.3d at 963; *see also Biestek*, 139 S. Ct. at 1154. Here the VE testified that suitable jobs existed in significant numbers, but he did not consider a limitation precluding work requiring detailed or complex instructions. If Douglas's RFC includes such a limitation, two of the jobs identified may not be available to him. Substantial evidence therefore does not support the VE's testimony, or the ALJ's reliance on such testimony. The court may not weigh the evidence on its own. Accordingly, remand is necessary so that the ALJ may reweigh the reviewing psychologists' opinions in light of their simple-instructions limitation and determine how, if at all, this limitation affects the RFC and step-five finding.

**B.    RFC Assessment**

Douglas challenges the ALJ's RFC assessment. (R. 11, Pl.'s Br. at 9-14.) "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The ALJ has "final responsibility" for assessing a claimant's RFC. *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021) (internal quotations and citation omitted).

Douglas claims that the ALJ failed to account for pace-related limitations supported by the record. (R. 11, Pl.'s Br. at 9-11.) He asserts that while the ALJ correctly found that he could not work at a production-rate pace, he erred by determining that Douglas could meet end-of-day production goals. (Id. at 9-10.) Douglas cites evidence that, according to him, shows he cannot meet end-of-day quotas. But the court may not reweigh evidence or substitute its judgment for that of the ALJ's. *See Deborah M.*, 994 F.3d at 788. Here the ALJ relied on the reviewing psychologists' opinions that Douglas's ability to maintain pace was not limited to a marked level and that he could maintain "consistent pace in a typical work environment." (A.R. 25, 86, 121.) Reviewing psychologist Dr. Voss similarly determined that Douglas's capacity "to effectively engage in work-like activity on a sustained basis" was limited but not at such a level that would "preclude all work-related activity." (Id. at 81-82, 96-97.) The ALJ reasonably relied on these opinions in finding that Douglas could not work at production-rate pace but could complete end-of-day goals.

Douglas next contends that the RFC did not adequately account for his CPP limitations as a whole, given the ALJ's finding that Douglas has "moderate" CPP limitations. (R. 11, Pl.'s Br. at 10-11 (citing A.R. 20).) In assessing Douglas's CPP limitations, the ALJ relied on the reviewing psychologists' opinions that Douglas has the capacity to "maintain the concentration and persistence necessary to carry out simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment." (A.R. 25 (citing id. at 86, 121).) Based on these opinions, the

13

ALJ limited Douglas to simple, routine, repetitive tasks not performed at production-rate pace. (Id. at 22.) Douglas suggests that the ALJ's RFC does not account for the "totality" of his CPP limitations. (R. 11, Pl.'s Br. at 10 (citing *Decamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019).) In response the government cites the Seventh Circuit's recent decision in *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), in which the court found that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." (R. 30, Govt.'s Notice of Supp. Authority.) Given the finding in *Pavlicek* that a moderate CPP limitation was not inconsistent with assessed RFC, the court finds no error here. The ALJ reasonably relied on the reviewing psychologists' narrative explanations regarding Douglas's CPP limitations, and those narratives are consistent with the moderate rating in this area. *See Pavlicek*, 994 F.3d at 783.

Douglas also argues that the ALJ erred by posing hypotheticals to the VE regarding off-task time and daily reminders and then failing to incorporate those limitations into the RFC. (R. 11, Pl.'s Br. at 11-12.) An ALJ need only include in the RFC limitations supported by the record. *See Deborah M.*, 994 F.3d at 791; *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Relying on the reviewing psychologists' opinions, the ALJ found that Douglas's CPP limitations were neither marked nor work preclusive and that he was able to perform "simple tasks in a reasonably punctual fashion and consistent pace." (A.R. 25 (citing id. at 86, 121).) As such, support was lacking for an off-task limitation, and the ALJ was not

14

required to account for off-task time in his RFC. (Id.) With respect to Douglas's alleged need for daily reminders, the reviewing psychologists found that Douglas suffers from memory deficits and difficulty understanding and remembering detailed or complex instructions. (Id. at 85, 121, 140.) Insofar as a need for daily reminders may relate to such limitations, the ALJ on remand should address remand whether the record supports a need for daily reminders, especially since the VE found work would be precluded if daily reminders were required. (Id. at 67-68.)

Douglas's final challenge to the RFC is that the ALJ failed to account for the effects of his obesity. (R. 11, Pl.'s Br. at 13-14.) The ALJ noted, however, that Douglas's BMI was between 40 and 47 and that he qualified as clinically obese. (A.R. 19.) The ALJ "considered how weight affects [Douglas's] ability to perform routine movement and necessary physical activity within the work environment." (Id.) The ALJ also acknowledged the non-obvious effects of obesity and the impact obesity may have in combination with other impairments. (Id.) Given Douglas's testimony that his obesity affects him only "a little bit" and other objective medical evidence, the ALJ determined that the record supported "minimal limitations" based on obesity combined with other physical impairments. (Id.) Douglas complains that the ALJ's discussion occurred at step two, rather than in the RFC assessment. (R. 11, Pl.'s Br. at 13.) But in assessing Douglas's RFC the ALJ also discussed physical deficits and found that treatment records showed "no adaptive devices for mobility or ambulation" and independent functioning "from an ambulatory level without assistive device and without assistance." (A.R. 24 (citing

15

id. at 499-501).) Furthermore, the ALJ assigned great weight to the state agency physicians' opinions that Douglas's obesity was non-severe and that he could perform light work. (Id. at 25, 80-83, 114-18.) Thus, the ALJ supported his physical RFC assessment with substantial evidence.

## C.     Symptom Evaluation

Douglas argues that the ALJ erred in evaluating his subjective symptom allegations. (R. 11, Pl.'s Br. at 14-16.) An ALJ's symptom evaluation is entitled to great deference because of the ALJ's ability to observe firsthand the believability of the claimant's symptom descriptions. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may reverse a symptom assessment only where it is "patently wrong." *Id.* at 816. The ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

Douglas contends that the ALJ used the incorrect "entirely consistent" standard of review to evaluate Douglas's symptoms testimony and compounded that error by failing to explain sufficiently his reasoning. (R. 11, Pl.'s Br. at 14-15 (citing A.R. 23).) Courts have rejected the "entirely consistent" argument where the ALJ's

16

analysis tracked the correct standard of determining whether the objective medical evidence and other evidence substantiated the symptom statements. *See Harris v. Saul*, 835 Fed. Appx. 881, 886 (7th Cir. 2020). Here the court finds that in assessing the severity of Douglas's symptoms the ALJ appropriately considered the applicable factors, including objective medical evidence, treatment efficacy, and daily activities, and made specific findings to support with substantial evidence his evaluation of Douglas's subjective statements about his symptoms. (A.R. 23-25.)

Douglas nonetheless argues that the ALJ's analysis was not "sufficiently specific" to allow him or a subsequent reviewer to understand why the ALJ found a number of inconsistencies between subjective symptom allegations and the record. (R. 11, Pl.'s Br. at 15-16.) As an example, Douglas points to his alleged speech impairments and claims that the ALJ did not explain his finding that such issues were "largely cognitive" and that they did "not manifest as impairments." (Id. (citing A.R. 22-23).) As the government notes, however, the ALJ was merely summarizing Douglas's own testimony regarding his speech issues. (R. 24, Govt.'s Mem. at 13-14.) During the hearing Douglas testified that his speech was "impaired a little bit" as a result of his strokes. (A.R. 43.) He explained that he has "problems coming up with words" to reflect what he wants to say. (Id. at 44.) The ALJ asked him whether his speech issues relate to slurring words or a cognitive issue of getting the words in his head out of his mouth, and Douglas said the latter applied. (Id. at 44-45.) Douglas acknowledged that he had reached maximum medical improvement with speech. (Id. at 44.) Thus, when the ALJ described his

17

speech issues as "largely cognitive" and "not manifest[ing] as impairments," he was merely referring to Douglas's own testimony. (Id. at 22-23.) Regardless, in his RFC the ALJ restricted Douglas from working in jobs requiring frequent or constant verbal communications. (Id. at 22.) The court finds nothing "patently wrong" with the ALJ's analysis of Douglas's speech issues. *Murphy*, 759 F.3d at 816.

Finally, Douglas argues that the ALJ erred by assigning "little weight" to his sister-in-law's function report because she was "not an acceptable medical source." (R. 11, Pl.'s Br. at 15-16 (citing A.R. 26).) The government concedes that if the ALJ rejected the report because the source lacked "medical training or expertise," such reasoning would have been erroneous. (R. 24, Govt.'s Mem. at 14.) But the government suggests that the ALJ may have had a valid reason for discounting the report or, in the alternative, that any error by the ALJ in this regard was harmless. (Id.) The ALJ did state that he found the state agency medical consultants' opinions more persuasive than the sister-in-law's function report. (A.R. 26.) But because the ALJ did not explain why those opinions were more convincing, the ALJ failed to support with substantial evidence his evaluation of the function report. Accordingly, the court remands the ALJ's symptom evaluation only insofar as his assessment of the sister-in-law's function report was not supported by specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

18

## Conclusion

For the foregoing reasons, Douglas's motion for summary judgment is granted, the government's motion is denied, and this matter is remanded for further proceedings consistent with this memorandum opinion and order.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**